UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**HERIBERTO VALIENTE,**　　　　　　　　　　Case No.: 22-23143-CIV-ALTONAGA/Damian
*individually and on behalf of*
*all those similarly situated,*

　　　　Plaintiff,

v.

**KENDALL CREDIT AND**
**BUSINESS SERVICE, INC.,**

　　　　Defendant.
_____/

**MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

　　　　Defendant, Kendall Credit and Business Service, Inc. ("Kendall Credit"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), moves for entry of an Order dismissing the First Amended Class Action Complaint ("Complaint") filed by Heriberto Valiente ("Plaintiff"), for failure to allege any claim that is "plausible on its face" under *Twombly*[1] and, in support hereof, states as follows:

**I.　　Procedural History and Pertinent Allegations of the Amended Complaint**

　　　　Kendall Credit previously filed a Motion to Dismiss Plaintiff's original Complaint. (D.E. 1; 6). Instead of defending his pleading, Plaintiff attempted to correct its deficiencies by amending it. (D.E. 10). The Amended Complaint, however, fails to cure the defects in the original Complaint as it continues to allege classes that lack standing and assert claims that are not legally viable.

　　　　In his Amended Complaint, Plaintiff alleges that, on February 18, 2022, he sought and obtained medical treatment at West Kendall Hospital ("Kendall Hospital"). (D.E. 10 ¶ 12; D.E. 10-2). Plaintiff alleges he is obligated to pay Kendall Hospital for the medical services rendered

---

[1]　　*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

(the "Debt"). (D.E. 10 ¶ 12). Plaintiff does not allege that he ever was unsure of the identity of the entity in whose facility he obtained medical services or his obligation to pay for the medical services. Plaintiff alleges the Debt went into default one day later, on February 19, 2022. (*Id.* ¶ 14). Plaintiff alleges Kendall Credit is a debt collector as that term is defined by the Fair Debt Collection Practices Act ("FDCPA"). (*Id.* ¶ 25).

Plaintiff alleges that, on May 1, 2022, Kendall Credit sent Plaintiff a letter which contained a validation notice and "represented '06/05/2022' as the 'date that the debt collector will consider the end of the validation period'" (the "First Letter"). (*Id.* ¶ 48). Plaintiff alleges the First Letter indicated Kendall Credit was a third-party attempting to collect the Debt. (*Id.* ¶¶ 29, 33). Plaintiff alleges that, on May 18, 2022, Kendall Credit sent him a Statement thanking him for his "recent payment" and advising "it has been applied to your balance" (the "Second Letter"). (*Id.* ¶ 51; D.E. 10-2). Plaintiff alleges the Second Letter overshadowed "the least sophisticated consumer [sic] right to dispute the Consumer Debt, or otherwise demand validation of the Consumer Debt, because [it] demands payment in full . . . on or before May 28, 2022." (D.E. 10 ¶ 67).

Although Plaintiff concludes Kendall Credit is required to register as a consumer collection agency with the Florida Department of State, pursuant to Florida's Consumer Collection Practices Act ("FCCPA"), he fails to allege any facts supporting this conclusion. (*Id.* ¶ 68). Plaintiff alleges Kendall Credit attempted to collect the Debt through the "First Letter *or* the Second Letter" while it was not registered and alleges Kendall Credit does not fall within any of the FCCPA exemptions to registration. (*Id.* ¶¶ 69, 70 (emphasis added)). Plaintiff includes in his Complaint the conclusory allegation that Kendall Credit's collection activities directed toward Plaintiff constitute a criminal misdemeanor under Florida law. (*Id.* ¶ 72). Plaintiff vaguely alleges Kendall Credit, "by and through the First Letter *and/or* the Second Letter, caused Plaintiff to pay *all and/or* a portion of

2

the Consumer Debt"[2] even though Kendall Credit could not legally collect or attempt to collect the Debt because it is not registered under Florida Law. (*Id.* ¶ 73 (emphasis added)).

Plaintiff advances three causes of action against Kendall Credit: (1) violation of 15 U.S.C. § 1692e, e(2)(A), e(5), and e(10); (2) violation of 15 U.S.C. § 1692g(b); and (3) money had and received. (*Id.* ¶¶ 88-109). Plaintiff purports to assert each of these claims on behalf of similarly situated persons: the "License Class" (Count I); the "Overshadow Class" (Count II); and the "Money Had and Received Class" (Count III). (*Id.* ¶¶ 74-87). Plaintiff fails to allege sufficient facts to state claims that are plausible, instead of merely possible, and the few vague and conclusory facts that he has alleged are contradicted by the exhibits attached to the Complaint as follows: (A) as to Count I, insufficient facts have been alleged to support the conclusion that Kendall Credit is subject to registration as a debt collector under the FCCPA; (B) as to Count I, the First Letter contradicts Plaintiff's conclusory allegation that it was an attempt to collect a debt; (C) as to Counts I and II, insufficient facts have been alleged as to any payment; (D) as to Count II, Plaintiff fails to state a claim for overshadowing; (E) as to Count III, insufficient facts have been alleged as to the elements of the claim, the equitable claim fails as a matter of law because a legal remedy exists, and the common law claim for money had and received cannot be used to end-run the FCCPA's bar on licensing claims; and (F) the claims of the three classes alleged by Plaintiff should be dismissed for lack of Article III standing.

## II. Legal Standard Applicable to Motion to Dismiss

Every pleaded claim must be facially "plausible" – that is, it must allege sufficient factual content to permit the reasonable inference that the defendant is liable for unlawful conduct.

---

[2] Plaintiff chose not to reveal how much was paid, when it was paid, how it was paid or even to whom it was paid.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). To meet this "plausibility" standard, a plaintiff must allege "sufficient facts" - - enough to move beyond the level of speculation - - to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, at 570. A mere "thread-bare" or "formulaic" recital of elements, naked legal conclusions, and unadorned, "the-defendant-unlawfully-harmed-me" accusations are not enough. *Iqbal*, 556 U.S. at 678; *Twombly*, at 555. Instead, the allegations must be factual (not conclusory) and suggestive (not neutral). *Twombly*, at 557. A claim's allegations must "possess enough heft" to show an entitlement to relief in order to justify the continued costly process of litigation. *Id. See also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F. 3d 705, 719 (2d Cir. 2013) (citing goal of "prevent[ing] settlement extortion," noting conclusory allegations, standing alone, "are a danger sign that the plaintiff is engaged in a fishing expedition.") (citations omitted).

### III. Argument

A. <u>As to Count I, insufficient facts have been alleged to support Plaintiff's conclusory allegation that Kendall Credit is required to register as a debt collector under the FCCPA</u>

Plaintiff alleges Kendall Credit is liable to Plaintiff and the License Class under 15 U.S.C. § 1692e, e(2)(A), e(5) and e(10) "for attempting to collect consumer debts from Florida consumers without first registering and, thereafter, maintaining a valid consumer collection agency license in accordance with" the FCCPA. (D.E. 10 ¶¶ 89, 91-93). Plaintiff, however, fails to allege any facts that would support his conclusion that Kendall Credit properly must register with Florida as a debt collector under the FCCPA in the first place. Plaintiff alleges Kendall Credit's purported failure to register as a debt collector violates the FDCPA because it amounts to: (i) the false representation of the character, amount or legal status of any debt (§ 1692e(2)(A)); (ii) the threat to take any action that cannot legally be taken or that is not intended to be taken (§ 1692e(5)); and (iii) the use

4

of any false representation or deceptive means to collect or attempt to collect any debt (§ 1692e(10)). (*Id.* ¶¶ 88-95).

The FCCPA states: "A person may not engage in business in this state as a ***consumer collection agency*** or continue to do business in this state as a consumer collection agency without first registering in accordance with this part, and thereafter maintaining a valid registration." § 559.553(1), Fla. Stat. (emphasis added). A "consumer collection agency" is defined as "any ***debt collector*** or business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts, which debt collector or business is not expressly exempted as set forth in s. 559.553(3)." § 559.55(3), Fla. Stat. (emphasis added). A "debt collector" is defined as:

> any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . .

Fla. Stat. § 559.55(7). A "debt collector" under the FCCPA does not include:

> Any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person is acting as a debt collector for persons to whom it is so related or affiliated and if the principal business of such persons is not the collection of debts.

Fla. Stat. § 559.55(7)(b).

Plaintiff fails to allege any facts to support his conclusion that Kendall Credit is required to register under the FCCPA and the exhibits to the Complaint contradict such a notion. Both the First Letter and the Second Letter identify Kendall Hospital as the creditor. (D.E. 10-1 and 10-2). The Second Letter indicates that payments can be made at https://billpay.baptisthealth.net. A cursory review of public records demonstrates that Kendall Credit is corporately affiliated with Baptist Health. When "West Kendall Hospital" is searched online, it appears as "West Kendall Baptist Hospital" with a web address of https://baptisthealth.net/locations/hospitals/west-kendall-

5

baptist-hospital. Kendall Hospital's homepage identifies Kendall Hospital as an affiliate of Baptist Health South Florida. Both are well known to be part of the Baptist healthcare system and have the Baptist pineapple logo prominently displayed throughout.

The Florida Department of State, Division of Corporations, during all material times, identified Baptist Health South Florida's mailing address as 6855 Red Road, Suite 600, Coral Gables, and its President as Brian E Keeley. A true and correct copy of the Florida Division of Corporations Detail by Entity Name for Baptist Health South Florida is attached as **Exhibit 1**. The Florida Department of State, Division of Corporations, during all material times, also identified Kendall Credit's mailing address as 6855 Red Road, Suite 500, Coral Gables, and its President as Brian E Keeley. A true and correct copy of the Florida Division of Corporations Detail by Entity Name for Kendall Credit is attached as **Exhibit 2**.[3] Baptist Health's principal business is indisputably not the collection of debts. Kendall Credit is a debt collector for Kendall Hospital, with whom it is related by common ownership and affiliated by corporate control, and the principal business of the Baptist healthcare system is the provision of medical services, not debt collection.

Plaintiff fails to include sufficient factual allegations to support his conclusory allegation that Florida law requires Kendall Credit to register as a debt collector for Kendall Hospital. More importantly, based on the exhibits attached to the Complaint and Plaintiff's own knowledge as to his healthcare choices, even the slightest pre-suit investigation by Plaintiff's counsel would have plainly revealed that it is not.[4] Under these circumstances, Count I of the Complaint properly should be dismissed for failure to state a claim under Rule 12(b)(6).

---

[3]   Kendall Credit requests the Court to take judicial notice of Exhibits 1 and 2 under Fed. R. Evid. 201(b)(2) and (c)(2).

[4]   Plaintiff's counsel has represented multiple plaintiffs asserting identical complaints against Kendall Credit and is thus fully aware that Kendall Credit is affiliated with Baptist. *See Martha*

> B. <u>As to Count I, the First Letter contradicts Plaintiff's allegation that it was an attempt to collect a debt</u>

Plaintiff alleges the First Letter "indicates that Defendant is a third-party attempting to collect a debt owed to West Kendall Hospital" and "attempts to collect $5,758.00 from Plaintiff for services rendered." (D.E. 10 ¶¶ 28-38). Plaintiff repeatedly highlights the fact that Kendall Credit identifies itself as a debt collector in the First Letter for the legal conclusion that, in fact, Kendall Credit is a debt collector. (*Id.* ¶¶ 28, 34, 35, 40). But Plaintiff's allegations are undermined by the content of the First Letter, which demonstrates it is not an attempt to collect a debt. (*See* D.E. 10-1).

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "That means in order to state a plausible FDCPA claim under § 1692e, a plaintiff must allege, among other things, (1) that the defendant is a 'debt collector' and (2) ***that the challenged conduct is related to debt collection***." *Pinson v. Albertelli Law Partners*, 618 F. App'x 551, 553 (11th Cir. 2015) (emphasis added) (citing *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F. 3d 1211, 1216 (11th Cir. 2012)). The FDCPA requires a debt collector to disclose in its initial communication that it "is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). This disclosure requirement is the FDCPA's "mini-Miranda" warning which provides a statement of a consumer's rights. Compliance with this boilerplate requirement does not convert an initial communication into an attempt to collect a debt.

---

*Ayme v. Kendall Credit and Bus. Serv.*, 22-cv-20621-JEM (S.D. Fla., March 1, 2022); *Jennifer Ayme v. Kendall Credit and Bus. Serv.*, 1:22-cv-20619-JLK (S.D. Fla., March 1, 2022); *Shamina Gilmore v. Kendall Credit and Bus. Serv.*, 1:22-cv-20956-RNS (S.D. Fla., March 29, 2022); *Kayla Terry v. Kendall Credit and Bus. Serv.*, 0:22-cv-60764-WPD (S.D. Fla., April 20, 2022).

As this Court has stated, the presence of the FDCPA's boilerplate disclaimer "while not irrelevant, cannot meaningfully shift the analysis." *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1243 (S.D. Fla. 2015) (Altonaga, J.) In *Bohringer*, the plaintiff argued the letter at issue "contains an implicit demand for payment because it states the amount of the debt currently owed and includes a disclaimer it is an attempt to collect a debt." 141 F. Supp. 3d at 1242. This Court rejected the plaintiff's argument explaining that a communication which "state[s] balances due but d[oes] not set deadlines, threaten consequences, explain how payments could be made, or otherwise attempt to induce payment of a debt" is "not a communication made in connection with the collection of a debt." *Id.* at 1243. The boilerplate disclaimer that a loan servicer is a debt collector is, simply, "not enough." *Id.* at 1242. *See also Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 432 (6th Cir. 2015) ("Courts have found that a disclaimer identifying the communication as an 'attempt to collect a debt[ ] . . . does not automatically trigger the protections of the FDCPA.' . . . the inclusion of an FDCPA notice [is] 'legally irrelevant.'"); *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1325 (S.D. Fla. 2014) ("the inclusion of a notice stating that the sender is a debt collector attempting to collect a debt does not automatically trigger the protections of the FDCPA."); *Mathieson v. Wells Fargo Bank, NA*, 524 F. Supp. 3d 1246, 1254 (M.D. Fla. 2021) ("a 'mini Miranda' warning, is not determinative of whether the letter is related to the collection of the debt.") (Citing *Hart v. Credit Control, LLC*, 871 F. 3d 1255, 1258 n.1 (11th Cir. 2017).).

Like the letter at issue in *Bohringer*, the First Letter does not set a deadline for payment. It does not demand payment. It does not threaten consequences or discuss repercussions or fees if payment is not tendered. It does not outline payment terms. It does not identify payment deadlines. It does not even discuss specifics of the underlying debt. Rather, the intent of the letter is to provide

information; not to collect a debt. (*See* D.E. 10-1). Plaintiff's allegations that the First Letter violates the FDCPA in Count I fail to state a claim upon which relief can be granted and must be dismissed. Moreover, because the actual letter in question is attached to the Complaint, an amendment will not cure this deficiency. *See Espinoza v. Countrywide Home Loans Servicing, L.P.*, No. 14–20756–CIV, 2014 WL 3845795, at *7 (S.D. Fla., Aug. 5, 2014) (Altonaga, J.) (denying motion for leave to amend because "there are no set of facts that could revive [Plaintiffs'] theor[ies] for relief, and therefore any further amendments of [the] complaint would be futile") (citing *Dorta v. Wilmington Trust Nat. Ass'n*, No 5:13-cv-185-Oc-10PRL, 2014 WL 1152917, at *7 (M.D. Fla., March 24, 2014) (alterations added)). Accordingly, with respect to the First Letter, Count I of the Complaint properly should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

      C.      <u>As to Counts I and II, insufficient facts have been alleged as to any payment</u>

Plaintiff claims he paid money in response to the "First Letter **and/or** Second Letter" and thus "sustained actual damages equal to the amount paid by Plaintiff." (D.E. 10 ¶¶ 73, 94 (emphasis added)). However, he fails to allege which letter he paid in response to, let alone how much he paid, when he paid, who he paid or the way he paid. The timing and recipient of any alleged payment is a critical fact because it informs the parties as to which letter is actually at issue, if any. Clearly, payment sent *before* a letter is received cannot form the basis for a legal claim as to the *later-arriving* letter. Plaintiff should also be required to allege that he made the alleged payments to Kendall Credit and not some other entity like Kendall Hospital or its corporate parent. Plaintiff's utter lack of specific factual allegations "clearly violates Federal Rule of Civil Procedure 8(a)(2), which requires a 'short and plain statement of the claim.'" *Hanninen v. Fedoravitch*, No. 08-23172-CIV, 2009 WL 10668707, at *2 (S.D. Fla., Feb. 26, 2009) (Altonaga, J.).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Hanninen*, 2009 WL 10668707, at *2 (citing *Twombly*, at 1964-65 (citations omitted)). "[A] complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Hanninen*, at *2 (citing *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F. 3d 955, 974 (11th Cir. 2008) (quoting *Twombly*, at 1965)). "When the allegations contained in a complaint are wholly conclusory . . . and fail to set forth facts which, if proved, would warrant the relief sought, it is proper to dismiss for failure to state a claim." *Id.* (citing *Davidson v. Georgia*, 622 F. 2d 895, 897 (11th Cir. 1980) (citations omitted)).

Moreover, the exhibits attached to the Complaint contradict Plaintiff's vague allegation that he *may* have paid money in response to the Second Letter. The First Letter, dated May 1, 2022, informs Plaintiff he has a balance of $5,758.00. (D.E. 10-1). As discussed above, the First Letter is not a debt collection letter and does not demand payment or threaten consequences for failure to pay. The Second Letter, dated May 18, 2022, identifies a balance due of $5,681.00 and states "Thank you for your recent payment, it has been applied to your balance." (D.E. 10-2).[5] Plaintiff does not attempt to allege actual harm or an appreciable risk of harm stemming from the Second Letter. Plaintiff's allegations amount to nothing more than a "bare procedural violation" of section 1692g(b). As such, the Complaint fails to plausibly make out a concrete injury in fact under section 1692g(b) and must be dismissed. *See Preisler v. Eastpoint Recovery Grp., Inc.*, No. 20-CV-62268-RAR, 2021 WL 2110794, at *5 (S.D. Fla., May 25, 2021) (dismissing 1692g(b) claim for failing

---

[5] Plaintiff fails to acknowledge that the Second Letter reflects that a payment was made in response to the First Letter. (*See* D.E. 10 ¶¶ 51-67).

to allege any "concrete 'downstream consequences'" and receipt of the misleading letter "is simply insufficient to confer standing."); *Gause v. Med. Bus. Consultants, Inc.*, 424 F. Supp. 3d 1175, 1201-02 (M.D. Fla. 2019) (dismissing the plaintiff's claim for a section 1692g(b) violation as a "bare procedural violation" with no concrete injury in fact); *Pozzuolo v. Portfolio Recovery Assocs., LLC*, 371 F. Supp. 3d 217, 224 (E.D. Pa. 2019) (holding where the plaintiff never intended to dispute the debt, the debt collector's violation of section 1692g(b) does not harm or present a material risk of harm to the plaintiff).

Plaintiff should not be allowed to survive a motion to dismiss based on intentionally vague and nebulous "and/or" allegations of payment. "[T]he FDCPA is a shield to protect debtors from unethical and illegal debt collectors; it is not a sword to be wielded to force defendants to pay plaintiffs who have not suffered." *Hill v. Resurgent Cap. Servs., L.P.*, No. 20-20563-CIV, 2020 WL 4429254, at *4 (S.D. Fla., July 31, 2020) (citation omitted). *See also Preisler v. Eastpoint Recovery Grp., Inc.*, No. 20-CV-62268-RAR, 2021 WL 2110794, at *6 (S.D. Fla., May 25, 2021) ("The Eleventh Circuit does not recognize an 'anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury[.]'").

<u>D.</u>     <u>Plaintiff fails to state a claim for overshadowing in Count II</u>

Plaintiff perfunctorily alleges that, pursuant to the First Letter, "the least sophisticated consumer had until '06/05/2022' to exercise his or her right, as guaranteed by § 1692g(a)(3)-(5) of the FDCPA, to dispute, or request validation of" the debt at issue, yet the Second Letter "unlawfully overshadowed these rights by demanding payment from the least sophisticated consumer of the entire [debt] on or before 05/28/2022." (D.E. 10 ¶ 98). Plaintiff alleges the overshadowing is a violation of § 1692g(b).

Determination of liability under Section 1692g(b) is a question of law for the Court to decide. *Wright v. AR Res., Inc.*, No.: 8:20-cv-985-T-33CPT, 2020 WL 4428477, at *6 (M.D. Fla., July 31, 2020). In the Eleventh Circuit, whether communications to a consumer run afoul of the FDCPA is typically decided under the "least sophisticated consumer" standard. *See Jeter v. Credit Bureau, Inc.*, 760 F. 2d 1168, 1177 n. 11 (11th Cir. 1985). Here, the First Letter provided Plaintiff with information necessary to challenge the debt allegedly owed before making a payment. (D.E. 10-1). The First Letter is simple and informative and even the most unsophisticated consumer would know from the First Letter that he could challenge or request validation of the debt. (*Id.*) Plaintiff does not allege the First Letter omits the information mandated by § 1692g(a). The Second Letter belies Plaintiff's allegation that it overshadowed the First Letter because the Second Letter demonstrates it was sent in response to a payment made by Plaintiff on the Debt. (*See* D.E. 10-2 "Thank you for your recent payment, it has been applied to your balance.").

Plaintiff does not allege he attempted to dispute or verify the debt or otherwise contact Kendall Credit, either by telephone or in writing at any point. Plaintiff does not allege the debt was incorrect, or that he ever intended to dispute or verify the debt. Plaintiff does not allege he would have attempted to dispute or verify the debt if it had not been for the Second Letter, or that it otherwise confused him as to his right to dispute and verify the debt. Rather, he simply chose not to dispute or seek validation of the debt that he admits he owed Kendall Hospital, and instead chose to make a payment before receiving the Second Letter. Count II for overshadowing properly should be dismissed for failure to state a claim upon which relief can be granted.

  E. <u>Plaintiff fails to state a claim for money had and received in Count III</u>

In Count III, Plaintiff alleges that Kendall Credit received and retained an unidentified amount of money "despite the fact the payment made to [Kendall Credit] included amounts which

[Kendall Credit] did not have the legal authority to assess or otherwise collect from Plaintiff because [Kendall Credit] did not possess a valid Consumer Collection Agency License from the Florida Department of State." (D.E. 10 ¶ 105). Plaintiff alleges Kendall Credit's failure to register under § 559.553(1) and (2) renders its collection activities directed at plaintiff a criminal misdemeanor under Fla. Stat. § 559.785. *(Id.* ¶¶ 68-72). This common law claim fails to state a claim upon which relief can be granted and properly should be dismissed with prejudice because any attempted amendment would be futile.

### 1.   *Plaintiff fails adequately to plead a claim for money had and received*

The common law count for money had and received "constitutes a remedy at law to recover money erroneously paid or received by a defendant when to permit the defendant to keep the money would unjustly deprive the plaintiff of his ownership of the money." *Sharp v. Bowling*, 511 So. 2d 363, 364-65 (Fla. 5th DCA 1987). "Though this remedy is an action at law, it is equitable in nature and is founded upon the equitable principle that no one ought to be unjustly enriched at the expense of another." *Sharp*, 511 So. 2d at 365. "Under Florida law, the elements of a claim for money had and received and unjust enrichment are the same." *Hakim-Daccach v. Knauf Int'l GmbH*, No. CV 17-20495-CIV, 2017 WL 5634629, at *7 (S.D. Fla. Nov. 22, 2017) (citation omitted). A claim for unjust enrichment has three elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F. 3d 1329, 1337 (11th Cir. 2012) (citing Florida law). And, as to the first element of unjust enrichment, "the benefit conferred on the defendant must be a <u>direct</u> benefit." *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (emphasis in original; citing Florida law).

Here, Plaintiff failed to plead the first and second elements of a claim for money had and received/unjust enrichment: (1) that he conferred a direct benefit on Kendall Credit; and (2) that Kendall Credit retained that benefit. Under *Twombly*'s construction of Rule 8, Fed. R. Civ. P., these pleading failures, standing alone, fail to nudge his claim "across the line from conceivable to plausible." *Iqbal*, at 680 (citing *Twombly*, at 570).

Plaintiff's pleading failures are irreparably compounded by the fact that the Second Letter demonstrates the exact opposite of Plaintiff's allegations: the Second Letter confirms Plaintiff's payment had been applied to the balance of his debt - - a debt he admits to owing. (D.E. 10 ¶ 12; D.E. 10-2). It is thus indisputable that, assuming for the sake of argument only that Kendall Credit received any payment from Plaintiff, Kendall Credit did not retain such money but applied it to Plaintiff's admitted indebtedness. Where "the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Drew Estate Holding Co., LLC v. Fantasia Distrib., Inc.*, No. 11–21900–CIV, 2012 WL 2341050, at *3 (S.D. Fla., Jan. 24, 2012) (Altonaga, J.) (citing *Crenshaw v. Lister*, 556 F. 3d 1283, 1292 (11th Cir. 2009) (citation and internal quotation marks omitted)). Plaintiff failed to allege the essential elements of an unjust enrichment claim and dismissal is appropriate. *See Baptists v. JPMorgan Chase Bank, N.A.*, 640 F. 3d 1194, 1198 n. 3 (11th Cir. 2011) (affirming dismissal of unjust enrichment claim and holding that plaintiff's 'unjust enrichment claim fails as a matter of law' because plaintiff did not allege the defendant failed to give adequate consideration for the benefit conferred.).

2.  *Plaintiff cannot assert the equitable claim for money had and received because his FDCPA claim provides an adequate remedy*

Plaintiff's equitable claim for money had and received also fails as a matter of law because Plaintiff has an adequate statutory remedy:

> Courts in Florida also require that a plaintiff pursuing an equitable
> claim based on a theory of unjust enrichment not have an adequate

> remedy at law available. . . . Courts presented with a claim for statutory violations and a claim for unjust enrichment predicated on those same statutory violations note that 'unjust enrichment is an equitable remedy available only where there is no adequate remedy at law.'
>
> . . .
>
> Although consumer debt collection practices acts were 'established to protect consumers from certain harassing and privacy-invading conduct,' it does not follow that a debt collector who collects money from a debtor in violation of the act has necessarily been unjustly enriched such that the debtor is entitled to restitution. *Muzuco v. Re$ubmitit, LLC*, 297 F.R.D. 504, 512 (S.D. Fla. 2013). This is because the money collected is a separate matter from the statutory violation. *Id*. (holding that the return of the money charged did not rob plaintiff class of standing to pursue FDCPA claim).

*Carrero v. LVNV Funding, LLC*, No. 18-23023-CIV-GOODMAN, 2014 WL 6433214, at *4 (S.D. Fla., Oc. 27, 2014) (collecting cases). As a matter of law, Count III should properly be dismissed with prejudice.

3. *Plaintiff cannot circumvent the fact that the FCCPA does not provide a private cause of action by pleading a count for money had and received*

The FCCPA "does not provide a private cause of action" for failure to register, and "a plaintiff cannot circumvent that fact by recasting a § 559.553 requirement into a § 559.72(9) violation." *Connor v. Midland Credit Mgmt., Inc.*, No. 18-23023-CIV-GOODMAN, 2019 WL 717413, at *11 (S.D. Fla., Feb. 20, 2019). *See also Matute v. Main St. Acquisitions Corp.*, No. 11-cv-62375-KMW, 2012 WL 4513420, at *3 (S.D. Fla. , Oct. 2, 2012) (Section 559.553 "does not give rise to a private right of action."). Federal Courts have "declined to extend the already amorphous boundaries of unjust enrichment action to allow for a de facto private action for violation of the FCCPA." *Connor*, 2019 WL 717413, at *11 (citing *Carrero*, 2014 WL 64733214, at *5 (in turn citing *Matute*, 2012 WL 4513420, at 9, 13)). The same result is warranted here.

<u>F.     The claims of the three classes alleged by Plaintiff should be dismissed<br>for lack of Article III standing</u>

Class claims that do not plausibly allege facts that satisfy Rules 23(a) and 23(b) fail and properly should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). "Whether a district court should address class certification pursuant to a motion to dismiss turns in large part on the facial plausibility of the putative class action complaint." *King v. UA Local* 91, No. 2:19-CV-01115-KOB, 2020 WL 4003019, at *6 (N.D. Ala., July 15, 2020) (granting motion to dismiss and striking class claims because, in relevant part, "Plaintiffs' class claims fail to satisfy Federal Rules of Civil Procedure 23(a) and 23(b)"); *see also Stepanovich v. City of Naples*, 728 F. App'x 891, 903 (11th Cir. 2018) ("[A]voiding the imposition of discovery on facially implausible claims is one of the key functions of 12(b)(6)") (citing *Twombly*, 550 U.S. at 558).

1.     *The "License Class"*

In Count I, Plaintiff defines the "License Class" as:

> (1) all persons with Florida addresses (2) that [Kendall Credit] sent a letter to (3) in an attempt to collect a consumer debt (4) while [Kendall Credit] was not registered or otherwise in possession of a valid consumer collection agency license from and/or with the Florida Department of State (5) during the twelve (12) months preceding the filing of this Complaint.

(D.E. 10, ¶ 75). Glaringly absent from this class definition is any allegation whatever that the License Class sustained any concrete injury in fact in order to establish Article III standing. The United States Supreme Court has made clear that "[e]very class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (*citing Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring). *See also Drazen v. Pinto*, 41 F. 4th 1354, 1361 (11th Cir. 2022).

Plaintiff defines the "License Class" based solely on an informational injury, which is only an alleged statutory violation, with no concrete harm. With no concrete harm, the class has no damages. And with no damages, the class does not have Article III standing. *See TransUnion*, 141 S. Ct. at 2214 ("no concrete harm, no standing"); *Spokeo Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation"); *Muransky v. Godiva Chocolatier, Inc.*, 979 F. 3d 917, 936 (11th Cir. 2020) (quoting *Spokeo*, at 1548) ("A 'bare statutory violation' is not enough, no matter how beneficial we may think the statute to be."); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F. 3d 990, 1004 (11th Cir. 2020) ("[a]n 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'").

Plaintiff cannot cure his pleading deficiency by alleging that "members of the Collection License Class that paid money to resolve a debt after receiving a collection letter from Defendant have sustained actual damages equal to the total amount paid by each member of the Collection License Class." (D.E. 10 ¶ 94). This conclusory, amorphous, overbroad allegation is not part of the class definition. Thus, the class will contain some members who paid and some who did not. As such, the class definition is impermissibly overbroad because it includes members who do not have any standing:

> A class definition that encompassed all passengers would contain members lacking an injury-in-fact, and consequently, Article III standing. *See Canady v. Allstate Ins. Co*., 1997 WL 33384270, *3, 1997 U.S. Dist. LEXIS 24067, *8 (W.D. Mo. June 19, 1997) ('Because the court cannot accept plaintiffs' blanket contention that every member of the proposed broad class definition has allegedly suffered harm as a result of the defendants' wrongdoing, the court must find that the class definition is overbroad.') (citing *MidPeninsula Citizen for Fair Housing v. ACCO Mgmt. Co.*, 168 F.R.D. 647, 649 (N.D. Cal. 1996)). This problem cannot be rectified by relying on individual passengers to 'opt-out' of the class if they did not suffer an injury. It was Plaintiffs' burden to propose a class definition that was precise, objective, and presently ascertainable,

17

and not amorphous or overbroad. For the many reasons stated above, Plaintiffs have failed to meet that burden.

*Conigliaro v Norwegian Cruise Line, Ltd.*, No. 05–21584–CIV, 2006 WL 7346844, at *6 (S.D. Fla., Sept. 1, 2006) (Altonaga, J.). Plaintiff's attempt to establish a claim on behalf of the "License Class" fails and the class claim in Count I must be dismissed and/or stricken.

2. *The "Overshadow Class"*

In Count II, Plaintiff defines the "Overshadow Class" as:

> (1) all persons with Florida addresses (2) that were sent a letter (3) from and/or by [Kendall Credit], or someone on [Kendall Credit's] behalf (4) in an attempt to collect a debt (5) during the twelve (12) months preceding the filing of this Class Action Complaint (6) whereby said letter demanded payment from the consumer prior to the deadline for the consumer to dispute and/or request validation of the underlying debt pursuant to by [sic] 15 U.S.C. § 1692g(a).

(D.E. 1-2, Compl. ¶ 55). Like Plaintiff's failure in Count I to sufficiently allege the "License Class" suffered any concrete injury in fact, Plaintiff also fails to make *any allegation whatever* that the "Overshadow Class" sustained any concrete injury in fact in order to establish Article III standing. For the reasons discussed in Section F(1) above, which are incorporated in their entirety herein, Plaintiff's attempt to establish a claim on behalf of the "Overshadow Class" fails and the class claim in Count II must be dismissed and/or stricken.

3. *The "Money Had and Received Class"*

Plaintiff defines the "Money Had and Received Class" as:

> (1) all persons with Florida addresses (2) who directly or indirectly paid monies (3) to [Kendall Credit], or to any third party demanded by [Kendall Credit] (4) during the forty-eight (48) months preceding the filing of this action (5) in response to, or in connection with, debt collection efforts commenced by [Kendall Credit].

(D.E. 1-2, Compl. ¶ 56). This ambiguous definition, which identifies putative class members as those who "directly **or indirectly** paid monies . . . to Defendant, or **to any third party** demanded

18

by Defendant" is insufficient under *Twombly* and fails to state a claim upon which relief can be granted. Not only is this allegation too ambiguous and uncertain to survive *Twombly*, but also, it would include claimants who have no viable claim under Florida law, which requires a plaintiff to "confer a direct benefit" upon a defendant. *See In re Takata Airbag Products Liab. Litig.*, 462 F. Supp. 3d 1304, 1328 (S.D. Fla. 2020). While *Takata Airbag* permitted plaintiffs to claim that they conferred a direct benefit "through indirect contact," there is no support for the claims being advanced here that Kendall Credit can be held liable for payments made by plaintiffs "indirectly" to "third parties." Either a benefit was conferred on Kendall Credit by each class member, or it was not; but if "third parties" received these benefits directly or **indirectly**, then the class members have no claim against Kendall Credit under Florida law. In other words, Kendall Credit cannot be liable for "money had and received" that it never had or received. Yet, that is exactly what has been pled in this action. The "Money Had and Received Class" is not viable under Florida law and should be dismissed.

WHEREFORE, Defendant, Kendall Credit and Business Service, Inc., respectfully requests entry of an order dismissing with prejudice the Amended Class Action Complaint filed by Plaintiff, Heriberto Valiente (D.E. 10), awarding all Kendall Credit's attorneys' fees and costs incurred in defending itself from this action pursuant to 28 U.S.C. § 1927 and 15 U.S.C. § 1692k, and for such further relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

**ISICOFF RAGATZ**
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ *Matthew L. Lines*
    Eric D. Isicoff
    Florida Bar No. 372201
    Isicoff@irlaw.com
    Matthew L. Lines
    Florida Bar No. 0243980
    Lines@irlaw.com
    Catherine A. Mancing
    Florida Bar No. 23765
    Mancing@irlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF this 2d day of November, 2022, upon the following:

Patti Zabaleta Law Group
Thomas J. Patti, Esq.
Victor Zabaleta, Esq.
3323 Northwest 55th Street
Fort Lauderdale, FL 33309
Tom@pzlg.legal
Victor@pzlg.legal
*Counsel for Plaintiff, Heriberto Valiente*

By: /s/ *Matthew L. Lines*
    Matthew L. Lines